EDMUND CARRIER, Plaintiff, v. ARROW EXTERMINATING Co. et al., Defendants.

Supreme Court, Trial Term, Onondaga County, February 27, 1951.

*Norman M. Pinsky* and *Wilfred E. Hoffman* for plaintiff.

*Oscar J. Brown* for defendants.

SEARL, J.   This is a negligence action, the jury having returned a verdict of $24,000.   The motion is for a new trial. The only questions involved are:

1. Is the verdict against the weight of evidence as to the negligence of defendants and as to contributory negligence on the part of plaintiff?

2. Is the verdict excessive?

Incidentally, a new question is injected as to whether casual remarks of counsel prior to trial can bind the parties.

Plaintiff claimed that in the early evening of December 12, 1949, he rode from Syracuse with a friend who was driving north and left his friend's car near the Coliseum, located on the State Fair Boulevard, for the purpose of attending a basketball game.   Finding he had chosen the wrong night for the game he recrossed State Fair Boulevard and started to walk toward Syracuse, expecting to board a city-bound bus when it might come along.   He had reached a point opposite the Halcomb Steel Company, where the boulevard is straight, level and well lighted for several hundred feet both north and south.   He testified he looked and saw the lights of a car in the center of the three-strip highway some 800 feet to the north.   He had reached a point where he had one foot on the most westerly strip and one foot on the shoulder when he claimed he was hit. The last time he looked he claimed the south-bound car that

struck him was 40–50 feet distant. He urged defendants' car swerved to the west from the center strip and hit him when he was practically at a point of safety.

Defendant driver, who claimed his eyesight had been impaired by use of chlorine gas previously in the day, but who plaintiff claimed had taken too freely of alcoholic beverages, stated he never saw plaintiff until about to strike him. That plaintiff could have been seen for a considerable distance is borne out by the testimony of occupants of the north-bound car who testified they saw plaintiff crossing the highway at a slight angle at a distance of 700–800 feet away. The driver of this car stated plaintiff might have been looking to the north as his back was to the witness at times.

In any event it cannot be successfully urged that on the question of negligence or contributory negligence the weight of evidence preponderates against plaintiff.

The answer to the second question is self-evident. Plaintiff was an employee of the City of Syracuse. He handed garbage pails up to the driver of a truck. This unattractive job permitted him to earn $3,100 from January 1st to December 12, 1949, the day of the accident. Hospital and doctor bills amounted to substantially $2,400.

Among the injuries received by the plaintiff were the following: Compound comminuted fracture of both bones of the right leg; insertion of a bone plate and metal brace; deformity of the right leg above the ankle; some permanent limp; permanent scars on head and forehead; brain lesion accompanied with tearing of the brain tissue; hemorrhage of the right kidney; fracture of the bones of the upper nose; evidence of fracture of the jaw; chronic headache and dizziness, reported to be permanent; intercapsular rupture and hemorrhage of the left kidney; 74% loss of hearing in the right ear; 34% loss in the left ear; loss of function of balance; permanent head noises resulting from damage to inner ear; injury to both right and left optic discs resulting in permanent blurred vision; proof that plaintiff will never be able to engage in hard work again.

Defense counsel called Norman Pinsky, plaintiff's record counsel, to the stand, asked Mr. Pinsky if he held a retainer from plaintiff and then inquired of counsel if he had not stated to Mr. Mangin, one of the counsel for defendants, on Wednesday, last, that plaintiff had taken a bus on the evening of the accident intending to go to some Polish club. Objection was immediately interposed. The court dismissed the jury and

discussion was taken up in chambers. Defense counsel urged that as attorney Pinsky was the agent of plaintiff, the latter would be bound by any statement the attorney might have made contradictory to plaintiff's statement on the stand to effect that he had gone to the Coliseum on the night of the accident, riding there in the car of a friend. Defense counsel urged that as Mr. Mangin was that day in Rochester the case be held open until the following day to permit Mr. Mangin to appear and contradict Mr. Pinsky. To permit defense counsel to preserve any rights he might have, it was finally stipulated that the court tell the jury that counsel had stipulated that if Mr. Mangin were called as a witness he would contradict Mr. Pinsky to the extent indicated.

I am not convinced in the first place that this evidence was competent. It is certainly hearsay and is not proof of any fact. If uttered by plaintiff's attorney, it may have been entirely in jest. To stake plaintiff's entire future on some such remark which involved at best only the veracity of plaintiff's attorney, would not only be the application of a new, but a very dangerous principle. The jury might well, in some instances, be trying not the real issues, but whether they took more to the appearance of attorney A or attorney B. It would entirely do away with the friendly interchange of views between opposing counsel looking toward the settlement of litigation. It would create distrust between members of the Bar and might well prompt counsel to take with them a bevy of supporting witnesses every time a case was discussed. It would not only endanger, but would for all time put an end to pre-trial conferences. These conferences the courts are strenuously attempting to encourage, for the purpose of reducing the overload on our crowded calendars.

Defendants' motion for a new trial of the issues in the instant case is denied.